UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JESSICA WYNNE VOGEL | CIVIL ACTION |
| VERSUS | NO. 25-631 |
| 1 PERCENT LISTS FRANCHISES, LLC ET AL. | SECTION "R" (3) |

## ORDER AND REASONS

Before the Court is the motion of Jessica Wynne Vogel and One Percent Lists Carolinas, LLC's ("Lists Carolinas") to dismiss the counterclaim and third-party claim of defendant 1 Percent Lists Franchises, LLC's ("Percent Lists").[1] For the following reasons, the Court grants in part and denies in part the motion.

## I. BACKGROUND

This case arises out of events related to a Franchise Agreement that Vogel, and later Lists Carolinas, Vogel's wholly-owned company, entered with defendant Percent Lists. On February 5, 2021, Jessica Wynne Vogel allegedly entered a Franchise Agreement with defendant Percent Lists, with Vogel as the franchisee and Percent Lists the franchisor.[2] On June 23, 2021,

---

[1]  R. Doc. 80.
[2]  R. Doc. 78 at ¶ 11; R. Doc. 20, Ex. 2.

Percent Lists and Lists Carolinas, Vogel's company, allegedly entered a Franchise Agreement that replaced the earlier agreement between Percent Lists and Vogel.[3] The Franchise Agreement provides that Louisiana law governs.[4]

In July 2023, Percent Lists allegedly wrote Vogel a letter purporting to terminate the Franchise Agreement between Percent Lists and Lists Carolinas.[5] Percent Lists alleges that Lists Carolinas failed to meet the Minimum Performance Standards set forth in the Franchise Agreement.[6] It further alleges that Vogel has continued to operate a real estate brokerage following the termination of the Franchise Agreement in violation of the non-compete provision of the Franchise Agreement.[7]

On January 14, 2024, Vogel filed this lawsuit in the Mecklenburg County Superior Court.[8] Defendants removed the action to the United States District Court for the Western District of North Carolina.[9] On March 31,

---

[3]  R. Doc. 78 at ¶ 13; R. Doc. 20, Ex. 3.
[4]  R. Doc. 20, Ex. 3.
[5]  R. Doc. 78 at ¶¶ 23, 25.
[6]  *Id.* at ¶ 26.
[7]  *Id.* at ¶ 39.
[8]  R. Doc. 1-4.
[9]  R. Doc. 1.

2025, the Western District of North Carolina ordered the transfer of the case to this Court.[10]

Following a rearrangement of the parties, Percent Lists filed an amended counterclaim and third-party complaint.[11] Percent Lists brings a breach of contract claim against plaintiff/counter-defendant Lists Carolinas. Percent Lists brings a breach of guaranty claim against third-party defendant Vogel.[12] Lists Carolinas and Vogel now move to dismiss the counter-claim and third-party claim respectively.[13] Percent Lists opposes the motion.[14] The Court considers the motion below.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a claimant must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court

---

10   R. Doc. 27.
11   R. Doc. 78.
12   *See* R. Doc. 78.
13   R. Doc. 80.
14   R. Doc. 81.

3

must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the claimant. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the party's claim is true. *See id.* It need not contain "detailed factual allegations," but it must go beyond "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *See id.* (quoting *Twombly*, 550 U.S. at 555). The claim must be dismissed if there are insufficient factual allegations "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *see Jones v. Bock*, 549 U.S. 199, 215 (2007).

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a party's claims. *Id.*

## III.  DISCUSSION

### A. Breach of Contract

This Court applies Louisiana law, as agreed to by the parties in the Franchise Agreement.  The essential elements of a breach of contract claim under Louisiana law are: "(1) the existence of a contract; (2) the party's breach thereof; and (3) resulting damages." *Padian v. Algiers Charter Sch. Ass'n, Inc.*, 274 So. 3d 1266, 1268 (La. App. 4 Cir. 2019) (citing *110 S. Jefferson Davis Pkwy, LLC v. Williams*, 165 So. 3d 1211 (La. App. 4 Cir. 2015)).  The Court, taking Percent Lists well-pleaded factual allegations as true, finds that counter-claimant has sufficiently pled a claim for breach of contract.

Percent Lists alleges that it entered into a Franchise Agreement with Lists Carolinas on June 23, 2021, with an effective date of February 5, 2021.[15] Percent Lists has therefore pled the first element, the existence of a contract. The Franchise Agreement, which counter-claimant references in its amended pleading, included minimum performance requirements for Lists

---

[15]  R. Doc. 78 at ¶ 13. The earlier effective date reflects that the Franchise Agreement between Percent Lists and Lists Carolinas replaced the Franchise Agreement between Percent Lists and Vogel, signed on February 5, 2021.

Carolinas.[16] Percent Lists alleges that Lists Carolinas did not meet these minimum performance standards, thereby breaching the contract.[17] Percent Lists has therefore pled the second element, breach. Finally, Percent Lists alleges that it suffered damages as a consequence of Lists Carolinas' breach.[18] Percent Lists has thus sufficiently pled all three elements of a breach of contract claim.

In its motion to dismiss Lists Carolinas does not contend that Percent Lists failed to allege the elements of a breach of contract claim. Instead, it asserts that the Franchise Agreement provides a specific remedy for the alleged breach. This argument has no bearing on whether Percent Lists has sufficiently pled a breach of contract claim. Moreover, the argument is based on a fundamental misinterpretation of the contract.

In support of its assertion, Lists Carolinas points to the Minimum Performance Standards provision in Exhibit A of the Franchise Agreement, which states:

> You must meet or exceed the following sales goals:
>   Thirty five (35) transactions in 2021, ninety (90) transactions in 2022, one hundred and forty (140) transactions in 2023, two hundred

---

[16]   R. Doc. 20 at 156. Percent Lists repeatedly cites to provisions in the Franchise Agreement in its counterclaim/third-party claim. The Court can look to the Franchise Agreement in deciding the motion to dismiss. *See Brand Coupon Network, L.L.C.*, 748 F.3d at 635.
[17]   R. Doc. 78 at ¶¶ 26, 28.
[18]   *Id.* at ¶ 32.

6

and seventy (270) transactions in 2025 and maintain two hundred seventy (270) or more in perpetuity. *If these goals are not met then Franchisor will obtain the right to sell one more franchise in that county. . . .*[19]

Lists Carolinas argues that the only remedy for a breach based on alleged failure to meet performance standards is selling an additional franchise in the county.

But this provision, and the remainder of the contract, provide no support for the assertion that the remedy contemplated in this provision is the sole remedy for breach by Lists Carolinas. The Minimum Performance Standards section does not state that sale of an additional franchise is the "sole" or "exclusive" remedy for such a breach. It is instead one available remedy for such a breach, not the only remedy. Indeed, the Franchise Agreement provides an additional remedy for this specific breach: the right to terminate; and provides elsewhere in the Agreement that rights and remedies are cumulative. Specifically, Section 16 of the Franchise Agreement states that Percent Lists has the right to terminate the agreement upon delivery of written notice if Lists Carolinas "fail[s] to meet or exceed the Minimum Performance Standards in Exhibit A."[20] And Section 20.11 provides that "[t]he rights and remedies . . . are *cumulative* and neither you

---

[19] R. Doc. 20 at 156 (emphasis added).
[20] *Id.* at 137-38.

7

nor we will be prohibited from exercising any other right or remedy under this Agreement or permitted by law or equity."[21]  Lists Carolinas reading of the contract is therefore erroneous.

Percent Lists as counter-claimant has adequately pled the three required elements of a breach of contract claim, and Lists Carolinas' erroneous reading of the contract does not negate any of the elements. Accordingly, the Court denies the motion to dismiss this claim.

**B. Breach of Guaranty**

Percent Lists alleges that Vogel personally guaranteed Lists Carolinas' Franchise Agreement, including the non-compete provision.[22]  The Owner's Guaranty between Percent Lists and Vogel is a contract.[23]  Percent Lists alleges that Vogel personally guaranteed each and every undertaking, agreement and covenant set forth in the Franchise Agreement, and that she agreed to be personally bound by, and personally liable for the breach of the Franchise Agreement.[24]  Percent Lists alleges two material breaches of the owner's guaranty: (1) Percent Carolinas' alleged material breach of the Franchise Agreement; and (2) Vogel's alleged breach of the Franchise

---

[21]  *Id.* at 151 (emphasis added).
[22]  R. Doc. 78 at ¶¶ 34-35.
[23]  *See* R. Doc. 20 at 165-167.
[24]  R. Doc. 78 at ¶ 34.

Agreement's non-compete provision.²⁵  And Percent Lists alleges that it suffered damages as a result of the breach, including that the Franchise Agreement contains a liquidated damages provision for breach of the non-compete.²⁶

Vogel argues that Percent Lists claim against her should be dismissed because the Franchise Agreement was modified to allow the behavior that Percent Lists argues constitutes a breach of the non-compete agreement. This ignores the first alleged material breach.  Percent Lists has pled a contract, breach thereof, and damages as to Vogel's guarantee of Percent Carolinas' performance.  And the Court has found that Percent Lists has adequately alleged a breach of the underlying Franchise Agreement for Percent Carolinas' alleged failure to meet the minimum performance standards.  Percent Lists has thus adequately alleged breach of guarantee based on Percent Carolinas' breach of the Franchise Agreement, and Vogel has not contested this showing.  Percent Lists claim as it relates to this alleged breach thus stands.

Vogel is correct as to the other alleged material breach, Vogel's alleged violation of the non-compete provision.  As stated above, Vogel argues that

---

²⁵   *Id.* at ¶¶ 33-43.
²⁶   *Id.* at ¶¶ 37-41.

9

the Franchise Agreement was modified to allow the conduct underlying Percent Lists' claim. At issue is the non-compete provision of the Franchise Agreement and a modification to it in Exhibit B. Section 17.6, the non-compete provision states:

> Competitive Restrictions. Upon termination or expiration of this Agreement for any reason whatsoever (and you have not acquired a Successor Franchise), you and your owners agree that for a period of two (2) years commencing on the effective date of termination or expiration neither you nor any of your owners will have any direct or indirect interest (e.g. through a spouse or child) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, member, Manager, representative or agent or in any other capacity in any Competitive Business operating:
> (a)   At the Site or within the Protected Area or Target Marketing Are, or through the Practice;
> (b)   Within twenty-five (25) miles of the Site or the Protected Area or Target Marketing Area; or
> (c)   Within twenty-five (25) miles of any other 1 Percent Lists Business or its Site or Protected Area or Target Marketing Area, in operation or under construction on the later of the effective date of the termination or expiration.[27]

Elsewhere, the Franchise Agreement defines "Competitive Business" as:

> [A]ny business (other than a 1 Percent Lists Business operated under a Franchise Agreement with us) or facility owning, operating or managing, or granting franchise or licenses to others to do so, any real estate or other business or facility that offers services related to real estate brokerage or any other products or services that are the same or similar to the Products and Services (including Other Services) then offered by 1 Percent Lists Businesses, or any business that offers, sells or advertises real estate brokerage services.[28]

---

[27]   R. Doc. 20 at 142.
[28]   *Id.* at 124.

10

Exhibit B amends section 17.6, the non-compete provision, by adding the following language to the end of the section:

> Notwithstanding the foregoing, none of the restrictions in this Section 17.6 shall apply (i) if you terminate the Agreement under Section 16.1 [Termination of Agreement By Franchisee], and (ii) Competitive Business for purposes of the restrictions applying following termination or expiration of this Agreement shall not include you owning, operating or working as licensed broker for a business that offers, sells or advertises real estate brokerage services."[29]

Section 16.1 pertains to the termination of the agreement by the franchisee (Lists Carolinas/Vogel) due to a breach by Percent Lists. Section 16.2 covers termination by Percent Lists.

Percent Lists argues that the "and" in the amendment serves to join the two provisions, with (i) serving as a condition precedent to (ii). Vogel argues that this would lead to an absurd result. Although the placement of "(i)", "(ii)", and "and" indicates that the two provisions are joined, the result is nonsensical. Section (i) provides that the non-compete restrictions of 17.6 shall not apply if the termination is under 16.1. If the non-compete restrictions are already inapplicable in such a case, which is achieved by (i), there is no need to limit the definition of "Competitive Business." Instead, the logical reading, which this Court holds is the correct one, of the amendment is as follows: (1) None of the restrictions in this Section 17.6 shall

---

[29] *Id.* at 157.

apply if you terminate the Agreement under Section 16.1 (franchisee termination); and (2) Competitive Business for purposes of the restrictions applying following termination or expiration of this Agreement shall not include your owning, operating or working as licensed broker for a business that offers, sells or advertises real estate brokerage services. *See Matter of Clark*, 891 F.2d 111, 114 (Louisiana law dictates that contract terms should not be construed "in such a manner as to lead to absurd or unreasonable consequences.").

Percent Lists alleges that Vogel breached her personal guaranty by practicing real estate brokerage representing home buyers and sellers. The Court finds that this activity is not prohibited by the non-compete provision as amended by Exhibit B to the Franchise Agreement. Accordingly, the Court dismisses Percent Lists' claim for breach of guaranty against Vogel for that action. Percent Lists' claim for breach of guaranty against Vogel based on other alleged breaches of the Franchise Agreement remains.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES IN PART and GRANTS IN PART Lists Carolinas and Vogel's motion to dismiss Percent Lists counterclaims. The Court denies the motion as to Count 1, breach of

contract, against Lists Carolinas. The Court grants in part the motion as to Count 2, breach of guaranty, only as to the claim that Vogel violated the non-compete provision.

It is hereby ordered that Percent Lists' claim against Vogel for breach of guaranty based on her alleged violation of the non-compete provision is DISMISSED. The motion is otherwise DENIED.

New Orleans, Louisiana, this __3rd__ day of February, 2026.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE